FILED

98 DEC 31 PM 1:46

U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

TRACY MINOR,　　　　　　　　　}
　　　　　　　　　　　　　　　　}
　　　Plaintiff　　　　　　　　}
　　　　　　　　　　　　　　　　}
vs.　　　　　　　　　　　　　　}　　CIVIL ACTION NO.
　　　　　　　　　　　　　　　　}　　98-AR-0477-M
ALACARE HOME HEALTH SERVICES,　}
　　　INC.,　　　　　　　　　　}
　　　　　　　　　　　　　　　　}
　　　Defendant　　　　　　　　}

ENTERED

DEC 3 1 1998

## MEMORANDUM OPINION

Presently before the court is a motion for summary judgment filed by the defendant in the above entitled-matter, Alacare Home Health Services ("Alacare"). The motion seeks judgment as a matter of law on claimed violations of the Family and Medical Leave Act of 1993 ("FMLA") 29 U.S.C. §§ 2601-2653 (1997 Supp.) and the Fair Labor Standards Act ("FLSA") 29 U.S.C. § 201 et seq. For the reasons set forth herein, the motion is due to be granted.

### I. Background

Plaintiff, Tracy Minor ("Minor"), began her employment with Alacare as a part-time Home Care Aide ("HCA") in May of 1994. Early in 1995, Minor became a full-time HCA. Home Care Aides attend to clients in their homes, providing personal care assistance such as bathing. HCA's compensation is determined by the number of office hours logged and the number of clients visited. After she was hired, Minor received an employee handbook that was later replaced with a revised handbook. The revised handbook contained information regarding the accrual and use of paid days off (termed "PDO's" in the handbook and in this opinion), Alacare's leave policy including specific

1

information on leave entitlement under the FMLA, and policies relating to time-sheets and overtime work. Minor read the handbook and signed the "Employee Acknowledgment" attesting that she read the handbook, understood the policies it contained, and understood the possible consequences for failure to follow those policies.

During her employment, Minor claims that she spent thirty minutes at the close of each work day preparing for the next day's clients. Minor claims that she was never paid for this time. Minor further claims that she worked a number of over-time hours for which she was not compensated at an over-time rate. Based on these assertions, Minor alleges that Alacare violated the FLSA.

In August of 1996, Minor informed Alacare that she was pregnant. Minor was asked to complete a "fitness for duty" form and was told that she may be unable to work as an HCA if the doctor restricted her activities due to her pregnancy. Minor requested a maternity leave beginning March 20, 1997 and extending until May 19, 1997. Minor received a letter from Alacare dated August 26, indicating that Minor's maternity leave would be designated as leave under the FMLA and generally informing Minor of her rights and obligations under the Act. Due to complications, Minor began her maternity leave on March 13, one week earlier than the anticipated date. Minor received a second letter from Alacare, dated March 14, reminding of her rights and obligations under the FMLA and updating her on the status of her PDO's, which determined the portion of Minor's leave that would be paid leave. During her leave, Minor occasionally spoke with Alacare personnel and affirmed her intention to return to work May 19.

Complications related to Minor's pregnancy required her to undergo major hysterectomy surgery on May 19, the day she was scheduled

to return from leave.  On or about May 23, Minor informed Alacare by phone that she would not be able to return as scheduled and inquired as to the status of her remaining leave.  Terri Hooper ("Hooper"), Minor's supervisor, told Minor that she needed to contact Kay Sykes ("Sykes"), Alacare's Director of Human Resources and would inform Minor of her status after consulting with Sykes.  After communicating with Sykes, Minor and Hooper had a subsequent telephone conversation on or about May 24.  Minor claims that, during this conversation, Hooper told Minor that her job and benefits were guaranteed for the next three months.  Hooper denies this, testifying instead that she said "weeks."

Approximately one week later, Hooper phoned Minor to tell her that she would be terminated on June 5, the day her FMLA leave expired, if she could not report to work.  Hooper testified she made this phone call knowing that Minor's surgery would prevent her from returning to work on the designated day.  Hooper also testified that she mentioned no other position to Minor at that time.  When Minor was unable to return to work on June 5, Alacare terminated her employment.  Minor alleges these circumstances constitute a violation of the FMLA.

## II. **FLSA Claim**

Minor alleges that Alacare violated the FLSA by failing to compensate her for all hours worked and by failing to compensate her at an over-time rate for hours worked in excess of forty in one workweek.

Minor claims that she never received compensation for the thirty minutes she claims to have spent each day preparing for the next day's clients.  Minor admits that she did not include this time on her Daily Visit and Mileage Record ("DVMR"), the form used by HCA's to keep track

3

of their work and relied upon by Alacare to determine an employee's compensation. The revised handbook that Minor received and admittedly read contains detailed procedures on Alacare's compensation policy that includes specific instructions on how employees shall record and report their hours worked. *Exhib. to Aff. of Suzanne Hand*. Section 200.04 informs employees, like Minor, who are paid based on a fee-for-service basis that they must include all hours worked and instructs them to record all "office hours" worked in the office section of the DVMR. *Id*. Section 200.04 also instructs employees to complete the Alacare Employee Time Sheet every day, sign it at the end of each work week, and have it reviewed and approved by their supervisor. *Id*. The section concludes by stating:

> Please ensure that your actual hours worked . . . are recorded accurately. Falsification of a time record is a breach of [Alacare] policy and is grounds for disciplinary action, up to and including termination of employment.

Despite these detailed instructions, and despite her acknowledgment that the DVMR is the "authoritative document that shows when [she] worked," *Depo. of Pl*. at 71, Minor did not include the thirty minutes she claims to have worked on her DVMR. Her failure to report all hours worked, in these circumstances, prevents Minor from surviving Alacare's motion for summary judgment with respect to her claim that she was not compensated for all hours worked.

    Minor also cannot survive Alacare's motion for summary judgment with respect to her claim that she has not received all over-time compensation to which she is entitled. The only evidence Minor offered to support her contention are the employee records Alacare keeps for each employee. *Pl.'s Exhibs. 3-7*. Minor contends that the records of her payroll history clearly show that she worked overtime on several

4

occasions. Alacare explains while the "hours" column of Minor's records makes it appear that she worked over-time, limitations in Alacare's accounting system cause the "hours" column on an HCA's record to include the number of patients an HCA sees in a two week period, plus any office hours worked. *Aff. of Suzanne Hand*, ¶ 5.[1] As a result, the "hours" column does not accurately reflect the hours an HCA worked. Alacare has submitted evidence of the hours that Minor actually worked. *Exhib. A-C to Aff. of Suzanne Hand*. This evidence indicates Minor was properly compensated for all of her time. In contrast, Minor has not presented evidence to rebut Alacare's explanation and indeed concedes that her paycheck is the only evidence she could present to support her claim that she was not properly paid. *Depo. of Pl.* at 171.

Because Minor has created no genuine issue with respect to either claim under the FLSA, Alacare's motion for summary judgment is due to be granted insofar as it relates to Minor's FLSA charge.

## III.  **FMLA Claim**

The purpose of the FMLA is to assist individuals in balancing work and family obligations. 29 U.S.C. § 2601(b)(1). Under the FMLA, an eligible employee[2] may take up to twelve weeks of leave to accommodate the birth or placement of a child, to care for a spouse, child, or parent with a serious medical condition, or for the employee's own serious medical condition. 29 U.S.C. § 2612. The Act

---

[1] Suzanne Hand is Alacare's Director of Accounting.

[2] FMLA defines an eligible employee as an employee who has worked for the employer for 12 months prior to taking leave and who has logged 1250 hours withing that 12 month period.

5

places affirmative obligations on employers to: (1) notify employees of their rights and obligations under the Act; (2) refrain from disciplining employees who take leave covered by the FMLA; (3) reinstate employees to the same or equivalent (in terms of pay, benefits, and responsibilities) job after their leave; and (4) continue the employees' health care during their leave of absence. *See Mora v. Chem-Tronics, Inc.*, 16 F. Supp.2d 1192, 1218 (S.D. Cal. 1998) (citing 29 U.S.C. §§ 2614, 2615, 2619). Any act which constitutes an interference with, restraint of, or denial of an exercise or attempted exercise of a right provided by the FMLA subjects the employer to liability. 29 U.S.C. §§ 2615, 2617. Minor alleges that Alacare interfered with her rights under the FMLA because it failed to fulfill obligations (1) and (3).

### A. *Failure to Reinstate to Same or Equivalent Position*

Minor contends that Alacare interfered with her rights under the FMLA by failing to satisfy the third obligation listed in the preceding paragraph -- failure to reinstate an employee to the same or equivalent position. Minor does not appear to argue that Alacare failed to return her to her position as HCA. Indeed, the surgical procedure she underwent on May 19 prevented her from obtaining a release to work without restrictions until July 28. Instead, Minor appears to contend that Alacare failed to offer her an existing clerical position that offered pay and benefits equivalent to those she received as an HCA.

The FMLA requires an employer to reinstate an employee returning from FMLA leave to the same position or one that is equivalent in terms of pay, benefits, and other conditions of employment. 29 U.S.C. § 2614(a)(1). The position that Minor claims Alacare should have offered

6

to her was a secretary-receptionist position. While Hooper and Sykes admit that they discussed the possibility of Minor filling this position, Hooper testified that the position was not available at the time Minor's leave expired. *Depo. of Hooper* at 64. All positions, including the secretary-receptionist position were "on hold" due to a planned consolidation of Alacare branches. *See id.*, at 64-65. Minor has submitted neither evidence nor argument to indicate that a position was indeed available.

By its own terms, the FMLA does not bestow upon a returning employee any right, benefit, or position of employment other than any right, benefit, or position to which the employee would have been entitled had the employee not taken leave. 29 U.S.C. § 2614(a)(3); 29 C.F.R. § 825.312(d). The FMLA therefore conferred no right to Minor to require Alacare to **create** a position for her where none existed. The situation is similar to those in which an employer, as part of a general reduction in force, terminates or lays-off an employee who is on FMLA leave. *See* 29 C.F.R. § 825.312(d). Employers in such cases have not been required to reinstate an employee who would have been eliminated even if he or she had not been on leave. *Id.* Because Minor could not return to her HCA position on June 5, and, at that time there was no other position available, Minor had no right to reinstatement under the Act. *See* 29 U.S.C. § 2614(a)(3); 29 C.F.R. § 825.312(d).

B.  *Notice of FMLA Rights*

The FMLA and the regulations promulgated pursuant to the Act require an employer to notify employees of their rights and obligations under the Act. Notification must be accomplished pursuant to the manner set out in the regulations. The employer must post, in a

conspicuous place, a notice explaining the Act's provisions. 29 U.S.C. § 2619; 29 C.F.R. § 825.300(a). If an employer distributes any written guidance to employees, such as an employee handbook, the handbook must contain information concerning employee entitlements and obligations under the FMLA. 29 C.F.R. § 825.301(a)(1). Upon receiving an employee's request for FMLA-qualifying leave, the employer must notify the employee of any expectations and obligations of the employee and the consequences for failure to meet those obligations. 29 C.F.R. § 825.301(b-c). The Act allows an employer to substitute any accrued paid or unpaid leave for FMLA leave, provided that the employer notifies the employee that such substitution will occur. 29 U.S.C. § 2612(d); 29 C.F.R. § 825.301(b)(iii). Employers must also responsively answer employees' questions concerning their rights and responsibilities under the Act. 29 C.F.R. § 825.301(d).

Minor attempts to identify several deficiencies in the manner in which Alacare informed her of her rights under the FMLA. First, Minor argues that Alacare did not provide training on the FMLA when she was hired, nor did Alacare explain the policies contained in the handbook. Second, Minor contends that Alacare did not designate her leave as FMLA leave and failed to inform her that it intended to substitute her accrued paid leave time for FMLA leave. Third, Minor contends that Alacare failed to responsively answer questions concerning her rights under the FMLA leave when Terri Hooper allegedly provided Minor incorrect information regarding the date on which she was to return to work.

The logical method of analysis in this case is, of course, to first ascertain whether Alacare did indeed commit a notice violation as Minor alleges. If Alacare did violate the regulations' notice

requirements, the court must next determine whether violation of the notice regulations can give rise to a cause of action under the FMLA. While courts from other jurisdictions have addressed this issue, it appears to be a matter of first impression to this court. *See Mora v. Chem-Tronics, Inc.*, 16 F. Supp.2d 1192, 1219 (S.D. Cal. 1998); *Lacoparra v. Pergament Home Centers, Inc.*, 982 F. Supp. 213 (S.D.N.Y. 1997); *Fry v. First Fidelity Bancorporation*, 1996 WL 36910, *3-5 (E.D. Pa. 1996). This court joins others in holding that a technical violation of one of the notice requirements set forth in the regulations will not subject an employer to liability **unless** the violation constitutes interference with, restraint of, or denial of an exercise or attempted exercise of an employee's FMLA rights. *See Mora*, 16 F. Supp.2d at 1219 ("facts and circumstances surrounding the kind and type of notice an employee received about the FMLA...determine whether a failure to notify an employee of his or her rights amounts to an interference"); *Fry*, 1996 WL 36910, *5 (lapse in compliance with one notice provision "does not automatically amount to a statutory violation, and hence, does not automatically support a cause of action under the FMLA").

Having set out the analytical framework for the case, the framework must now be applied. With respect to each of the violations Minor alleges, the court must determine whether a genuine issue of fact exists to support her claim. If Minor succeeds in demonstrating a genuine issue of fact as to her claim that Alacare committed notice violations, the court must then assume that such a violation occurred and inquire whether the violation interfered with, restrained, or denied Minor the exercise or attempted exercise of her rights under the FMLA.

1.  <u>Alleged Deficiencies in Alacare's Handbook</u>

Notwithstanding the issues raised in Minor's first argument, Alacare's actions to inform all employees of their rights and obligations under the FMLA via an employee handbook containing detailed information about the Act satisfy the regulations' initial notice requirement. *See* 29 C.F.R. § 825.301(a). Alacare's handbook devotes two full pages to the FMLA, informing employees of their rights and obligations under the Act and the manner in which Alacare administers its FMLA policy. *Exhib. 2 to Depo. of Pl.* In an effort to ensure that the information contained in the handbook does not go unnoticed, Alacare also requires employees to sign an "Employee Acknowledgment" attesting that the employee has "carefully read the policies, practices, regulations and other information in this handbook." *Exhib. 1 to Depo. of Pl.* The acknowledgment further attests that the employee understands that he or she is charged with knowledge of the handbook's contents, understands that he or she must comply with the policies it contains, and understands that infraction of the policies may result in disciplinary action, including termination. *Id.* Minor verbally acknowledged that she received the handbook, that she read it, that she did not understand parts of it but never asked anyone to explain the portions she did not understand. *Depo. of Pl. at 69.* She also signed the Employee Acknowledgment indicating that she read the handbook and understood the policies contained therein. *Exhib. 1 to Depo. of Pl.*

Neither the Act nor the regulations require an employer to "hand-hold" employees and lead them step by step through policies and procedures contained in its employee handbook. Indeed, the fact that the regulations require an employer to responsively answer an employee's questions concerning the FMLA suggests that employees who,

10

like Minor, do not understand everything in the handbook, are expected to ask questions. *See* 29 C.F.R. § 825.301(d). Minor has therefore failed to create a genuine issue as to whether Alacare committed the notice violation she alleges with respect to its employee handbook.

2. Alleged Failure to Designate FMLA Leave

In an attempt to identify a second deficiency in the notice Alacare provided, Minor next argues that Alacare failed to satisfy the requirements of 29 C.F.R. § 825.301(b) in notifying her of her rights and obligations under the FMLA. Minor contends that Alacare did not inform her that it designated the leave she began on March 13, 1997 as leave under the FMLA. To support her position, Minor argues that she checked the box marked "Personal Leave" when completing the form for her leave request on March 13, 1996 and that this act illustrates that Minor believed she was taking personal leave, not FMLA leave. *See Exhib. 9 to Depo. of Pl.*

The information presented to the court undercuts Minor's reliance on the mis-marked box. A glance at the form in question reveals that the check made in the box marked "Personal Leave" is crossed out and a new check mark appears in the box marked "Family/Medical Leave of Absence." *Id.* Minor's deposition testimony does not state that she marked the "personal" box because she thought she was taking personal leave, rather, she testified that she does not remember which box she marked. Moreover, Minor testified that she understood that her maternity leave would be designated as leave under the FMLA. *Depo. of Pl. at 103-4.*

Even if Minor did mistakenly believe that she was taking personal leave instead of FMLA leave, given the number of communications in

11

which Alacare informed Minor that her leave was FMLA leave, Alacare cannot possibly be held responsible for Minor's mistake. In providing the employee-specific notice contemplated in 29 C.F.R. § 825.301(b)(1), Alacare provided the majority of the seven pieces of information demanded by the regulation and relevant to Minor's situation. Failure to include the three remaining pieces of information is unlikely to constitute a notice violation; however, even if Alacare did commit a notice violation in failing to include certain information in its employee-specific notice, this violation did not interfere with the exercise of Minor's FMLA rights since all information omitted or left unclear in the employee-specific communication is contained in the handbook that Minor admittedly received and read. *See Fry*, 1996 WL 36910, *5.

Specifically, 29 C.F.R. § 825.301(b)(1) first requires an employer who knows that leave is being taken by an eligible employee for an FMLA qualifying reason to notify the employee that his or her leave will be counted against the employee's annual FMLA leave entitlement. Via letter dated August 26, 1996, just days after learning of Minor's request for time off, Alacare informed Minor that her leave would be designated as leave under the FMLA. When complications forced Minor to begin her leave on March 13 instead of March 20, as planned, Alacare immediately sent out a letter (dated March 14) reminding her of her rights and obligations under the FMLA.³

---

³ Alacare also sent a letter dated May 30, 1997 updating Minor on her remaining FMLA leave. The letter informed Minor that her leave would expire June 5, 1997, provided the name and phone number of the Human Resources Director and instructed Minor to contact that person if Minor required reasonable accommodations to return to work, and apprising Minor of the consequences of a failure to report to work. Minor testified that she never received the letter, but acknowledges that the address listed as her address is correct. *Depo. of Pl. at 138*. Because the court concludes that Alacare provided adequate notice even without considering the information conveyed in

12

Second, the regulations obligate an employer to provide notice of any requirement that the employee furnish medical certification of a serious health condition and the consequences for failing to provide such certification.  29 C.F.R. § 825.301(b)(1)(ii).  The August 26 letter references an enclosed medical certification form that Minor was to complete and submit within 15 days.  The letter informs Minor that failure to return the completed form within that time frame will result in disqualification of her leave request and could impact her insurance premiums.  The certification form itself bears the notation "Family and Medical Leave Act of 1993" just below the heading.  *See Exhib. 5 to Depo. of Pl.*[4]

Third, the regulations require an employer to inform an employee of any obligation to make premium payments for health care benefits.  29 C.F.R. § 825.301(b)(1)(iv).  The letter of August 26 informs Minor that her insurance premiums will be deducted from the paychecks she will receive while on leave due to her accrued paid days off.  After she has exhausted her paid leave, the letter informs her that she must make her payments by the first of each month until she returns to work.  The letter dated March 14, 1997 reminds Minor of her obligations to pay health care premiums if she should exhaust her paid leave before returning to work.

Fourth, the regulations require an employer to inform an employee whether the employer will require the substitution of paid leave for FMLA leave.  29 C.F.R. § 825.301(b)(1)(iii).  The August 26 letter informs Minor that her leave will be paid leave until she has exhausted

---

the May 30 letter, the dispute over whether Minor actually received the correspondence is immaterial.

[4] No additional reference was made to the certification form in the March 14 letter because Minor had already filed the form.

13

the PDO's she accrued prior to taking her leave. The letter then describes Minor's obligations after she exhausts her entitlement to paid leave. The communication of this information conveys Alacare's intent to substitute paid leave for FMLA time. The letter of March 14 contains an analogous reference, reminding Minor of Alacare's intent.

The regulations also require that the notice contain information as to whether an employer will require an employee returning from leave to file a "fitness for duty" report; information about the employee's "right to restoration to the same or an equivalent job upon return from leave;" and information about the employee's potential liability for payment of health insurance premiums paid by the employer if the employee does not return to work. 29 C.F.R. §825.301(b)(1)(v,vii,viii). While this information was not contained in either the August 26 or March 14 letter to the plaintiff, the information was contained in sections 300.02 and 300.06 of Alacare's employee handbook. *See Exhib. to Aff. of Kay B. Sykes*. In a case presenting a somewhat similar factual situation, the District Court for the Eastern District of Pennsylvania concluded that an employer's failure to say all the "right" things in its handbook can be cured by an adequate and complete notification of an employee's rights under the FMLA via an employee-specific notice. *See Fry*, 1996 WL 36910, *5. This court concludes that an employer's failure to say all the "right" things in its employee-specific notice can be cured by an adequate and complete notification of an employee's rights under the FMLA presented via an employee handbook. *See id.*; *see also Lacoparra*, 982 F. Supp. 213 (court looks at all notice provided to determine whether plaintiff was properly notified of her rights).

3. <u>Allegedly Erroneous Information</u>

Minor next argues that Alacare failed to adequately inform her of her rights under the FMLA because it allegedly provided erroneous information when she inquired as to the amount of leave she had remaining. Minor bases this charge on her allegation that Hooper told her, on or about May 24, that "everything was guaranteed for the next three months." *Depo. of Pl.* at 135. Though Hooper denies making this statement, for the purposes of Alacare's motion for summary judgment, the court must assume that the statement was made. The court also assumes, without deciding, that a supervisor who unintentionally provides an incorrect answer to an employee's question about the FMLA violates the notice requirement that an employer responsively answer questions about the FMLA. Even with these assumptions in her favor, Minor fails to demonstrate the existence of a genuine issue of material fact suggesting that this notice violation interfered with her rights under the FMLA. *See Mion v. Aftermarket Tool & Equip. Group*, 990 F. Supp. 535, 539 (W.D. Mich. 1997) (notice violation does not interfere with plaintiff's rights under the FMLA where plaintiff had not FMLA right to additional leave).

Based on the information presented by both parties, it is apparent that Minor's surgery prevented her from returning to work on June 5. In her brief, Minor attributes her inability to resume work on June 5 to the "prior representation made by the defendant as to available leave, **and the plaintiff's then medical condition.**" *Pl.'s Brief in Opp.*, at 12 (emphasis supplied). Hooper testified that, prior to Minor's termination, she realized that Minor's surgery would prevent her from returning to work without restrictions for at least four to six weeks after her surgery. *See Depo. of Hooper*, at 57. Minor's

15

physical limitations are further evidenced by the fact that she did not obtain a release to work, with restrictions, until June 16 and was not released to work without restrictions until July 28. Consequently, even if Hooper had "responsively answered" Minor's query regarding remaining leave time and informed Minor that she must return to work on Monday, June 5, Minor still could not comply. Any notice violation Alacare committed in misinforming Minor did not interfere with, restrain, or deny Minor's exercise of her FMLA rights. *See Mion*, 990 F. Supp. at 539.

Minor speculates that "[h]ad she been properly informed of her rights, she <u>may have been</u> able to produce a release to return to work even sooner" than June 16. *Pl.'s Brief in Opp.*, at 11 (emphasis supplied). While this contention (speculation?) has prevented other courts from granting an employer's motion for summary judgment, in this situation it offers Minor no assistance. In *Blankenship v. Buchanan Gen. Hosp., Inc.*, the District Court for the Western District of Virginia accepted plaintiff's contention that she could have obtained a release and returned to work before her leave expired on November 21, 1994, had she not been induced to rely on her employer's representation that her leave would expire November 29. *See* 999 F. Supp. 832, 839 (W.D. Va. 1998). In that case, the plaintiff suffered from severe stress and depression resulting from her mother's death, but was not physically incapable of performing her required tasks. *See id.* at 833, 839. In *Viereck v. City of Gloucester City*, the plaintiff had been injured in an auto accident and obtained a release to return to work on December 1, 1994. *See* 961 F. Supp. 703-704 (D.N.J. 1997). Her leave expired on November 29, 1994. *Id.* at 709. The court speculated that "if it meant saving her job, plaintiff probably could have

16

appeared for work two days earlier than her doctors recommended." *Id.*

Minor's situation is entirely different from *Blankenship* and *Viereck*. Minor had just undergone major hysterectomy surgery on May 19 and was taking pain killers at least until May 24. It is unlikely that Minor would have been released to work, even with restrictions, before June 16. Even if she could have returned, with restrictions, before her leave expired, Alacare could not have reinstated her. As discussed in Section III-A above, all positions were "on hold" at the time Minor's leave expired. Consequently, the only position to which Minor could have returned would have been her HCA position. It is simply impossible that she would have been able, on June 5, to perform the duties of an HCA. The fact that she was not released to work free from restrictions until July 28, over two months after her surgery, confirms this.

C. *Conclusion of FMLA Issue*

Minor has failed to demonstrate a genuine issue of material fact to support her charge that Alacare's failure to offer her a position as a secretary-receptionist interfered with her right to be reinstated to a position equivalent to that of an HCA. Minor has similarly failed to demonstrate a genuine issue of fact to support her claim that Alacare's notice violations interfered with the exercise of her rights under the FMLA. Alacare's motion for summary judgment on the FMLA issue is therefore due to be granted. An appropriate order granting Alacare's motion shall be entered separately.

DONE this ___31st___ day of December, 1998.

/s/ William M. Acker
WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE

17